IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GREGORY LAIRD, | Civil No. 04-6154-HO |
| Plaintiff, | ORDER |
| v. | |
| MARION COUNTY, | |
| Defendant. | |

The first amended complaint (FAC) alleges violations of the Americans with Disabilities Act, Age Discrimination in Employment Act, Or.Rev.Stat. § 659A.112, Or.Rev.Stat. § 659A.030(b), intentional infliction of emotional distress (IIED), and wrongful discharge. Defendant filed a motion for partial summary judgment.

## Undisputed Facts

Except where noted, the following facts are undisputed for purposes of resolving defendant's motion for summary judgment.

At all relative times, Ed Cavaille was the Marion County

Alternative Programs Supervisor. Ted Highberger, Jerry Kittinger and Todd Sheldon were assistant supervisors during plaintiff's employment with the Alternative Programs.

An annual employee evaluation meeting for plaintiff occurred on or about February 8, 2000. Plaintiff received an overall score of 2.95, which falls in the "meets expectations" category. In 1999, plaintiff's score fell within the "exceeds expectations" category. A narrative portion of the written 2000 evaluation cites negative employee and community feedback regarding plaintiff's performance, as well as the need for improvement in the areas of organization and self-control.

Plaintiff's overall performance score improved slightly in the year 2001, with a "meets expectations" score of 3.08. Plaintiff's supervisor noted that plaintiff still needed to work on communicating clearly and directly with other staff members, maintaining focus on the task before him, and controlling his emotions when dealing with young clients.

Plaintiff received a letter of reprimand for leaving chainsaws unlocked and a wood chipper with the key in the ignition on June 19, 2001, contrary to established Programs safety policies. Plaintiff admits that his actions during this incident amounted to serious safety violations. Plaintiff was suspended for one day without pay for this incident.

On June 21, 2001, plaintiff attended a meeting with co-

workers Jess Deardorff, Robert (Bob) Kean, Jerry Kittinger and supervisor Cavaille. Defendant contends that the purpose of the meeting was to resolve conflicts between plaintiff, Deardorff and Kean, and supervisor Cavaille. Plaintiff contends that Cavaille told plaintiff, Deardorff and Kean that they were problem employees, and that they needed to look for new employment.

Plaintiff received an overall rating of 2.92 in an evaluation dated March 6, 2002. In an evaluation dated March 21, 2003, plaintiff received an overall rating of 2.69, and a "needs improvement rating." The 2003 evaluation notes, inter alia, that gates and doors were left unlocked on plaintiff's watch, plaintiff's clients were left unsupervised at times, plaintiff often turned in paperwork late or incomplete, plaintiff misplaced wood deliveries on October 24, 2002, and plaintiff inappropriately handcuffed a female client to a chair.

On February 18, 2003, while driving a Programs truck with juvenile passengers, plaintiff passed a sheriff's deputy driving an inmate work van. A March 10, 2003 Juvenile Department Personnel Complaint form signed by Deputy Guest alleges that the truck driven by plaintiff cut off the van, so that Deputy Guest had to apply the brakes to avoid a collision. The Juvenile Department investigated this matter.

Defendant contends that on April 8, 2003, Programs supervisors observed plaintiff supervising youth splitting

firewood without proper safety equipment, in violation of a Programs safety directive. Plaintiff contends that youth lacking safety gear were from Jerry Kittinger's crew, Kittinger left his crew with plaintiff, plaintiff provided extra gear until he ran out, and plaintiff separated youth without gear from youth with gear. Plaintiff further contends that his supervisor did not investigate whether youth without gear were assigned to plaintiff.

## Plaintiff's Additional Facts

Plaintiff provides the following additional facts, which defendant does not dispute by way of response. Plaintiff's additional facts are therefore deemed admitted for purposes of resolving defendant's motion. L.R. 56(f).

Defendant employed plaintiff from 1987 until his termination in April, 2003. At that time, "Group Worker 2s" supervised juveniles in a work setting. The essential job functions were to drive juveniles to a destination and perform the job duty at the destination. This included litter patrols, recycling, wood cutting, moving surplus furniture and equipment, ditch cleaning, gardening, and parks maintenance. Cavaille tried to assign Group Worker 2s to their preferred jobs.

Plaintiff told supervisors and numerous co-workers about his shoulder condition, difficulty cutting wood, and need to refrain from cutting wood. Plaintiff was angry during some of these

4 - ORDER

conversations with supervisors and co-workers. Kittinger did not request medical documentation from plaintiff. Co-employee Kean knew that plaintiff had bursitis. Deardorff testified that he saw plaintiff with ice on his shoulder at work, and that plaintiff looked like he was in pain on more than one occasion.

Sheldon asked plaintiff for a doctor's note documenting the shoulder injury, but did not tell plaintiff that he could not accommodate plaintiff without such a note. Sheldon did not subsequently discuss plaintiff's shoulder problems with plaintiff. Highberger told Sheldon he did not accommodate plaintiff because he did not receive a doctor's note regarding plaintiff.

Plaintiff did not ask for a disability accommodation because he wanted to be a team player, did not want to affect his department with claims, believed he would possibly be terminated if he asked for an accommodation, and believed he would be moved to lighter work after mentioning his problems to his supervisor. Plaintiff first reported his shoulder condition to his supervisor in 1994. When asked why plaintiff did not go over his supervisor's head when he did not get results, he testified that he was given promises, and "believed that they were going to take care of it." Laird Depo. at 36. When asked whether plaintiff had any idea why three evaluations contain no mention of physical disabilities, plaintiff testified that the department did not

5 - ORDER

want a record of disability, in order to keep a high rating "with SAIF and those kinds of agencies." Laird Depo. at 63. Highberger and Cavaille commented that claims will cause the department's rates to go up. Plaintiff understood that Highberger and Cavaille were referring to Workers' Compensation claims. Laird Depo. at 39.

Plaintiff used vacation time to heal or rest or recuperate from his shoulder injury.

Cavaille testified that the department can't accommodate each employee at the point in the employee's career when, because of age or physical disability, the employee cannot perform one or more portions of his job. Cavaille Depo. at 87-88. He further testified that he understood from Human Resources that the department could not permanently accommodate one Group Worker, for example, without accommodating all Group Workers, "and if you did that, you couldn't do the work you're doing." Cavaille Depo. at 99-100.

Plaintiff's notice of dismissal is dated April 8, 2003, but Cavaille's signature is dated April 10, 2003.

Deardorff testified that Ed [Cavaille] leaves doors unlocked and leaves keys places, and "[w]e cover him constantly. He comes down and messes things up and we clean it up for him." Deardorff Depo. at 30. Deardorff perceived that plaintiff became more stressed after Deardorff addressed these complaints to Cavaille

during in 2001.

Deardorff stated that on the last day he recalled plaintiff working, he and other employees were told to leave at some point.

Deardorff heard from a number of people that plaintiff was being targeted.

Group Worker 3 Goodman had no concerns about plaintiff's work performance.

Plaintiff was born on April 16, 1957. Steve Nerrow, born February 6, 1971, replaced plaintiff.

Plaintiff received performance evaluation scores of 3.72 in 1999, 3.88 in 1998, 3.97 in 1997, and 3.89 in 1996.

In a letter provided to Cavaille on January 11, 2002, plaintiff reported that other employees lost keys in recent months, and that plaintiff had to let line staff into rooms to recover keys they left hanging in lock boxes and laying on desks.

Plaintiff does not routinely lose or turn in late documentation necessary for billing and record keeping. He did not fail to communicate scheduling, equipment and billing issues to Programs staff.

When plaintiff was first accused of leaving the key in the wood chipper, there was no policy on removing the key from the chipper after use.

Assistant supervisor Highberger stated on multiple occasions in staff meetings during 2001 that defendant could hire three new

workers for each old worker defendant employed.

During the first part of 2003, plaintiff was sent on seven times more wood cuts than some Group Worker 2's in his unit, and three times more than others. Some individuals who requested wood cuts did not receive them. Plaintiff did not request woodcuts.

## Discussion

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Defendant first argues that plaintiff has not provided sufficient evidence of satisfactory job performance. Where as here, plaintiff claims he was treated more harshly than other employees, and that the decision-maker used his own assessments of plaintiff's performance as a pre-text for age discrimination, it makes little sense to require plaintiff to prove that he met the decision-maker's expectations. See Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 612 n. 3 (9th Cir. 2001). Defendant is not entitled to summary judgment on this basis.

Defendant next contends that plaintiff fails to allege facts to support two elements of an IIED claim - that defendant intended to inflict emotional distress, and that defendant's acts constituted extraordinary transgressions of the bounds of socially tolerable conduct. Plaintiff alleges he suffered age

and disability discrimination in the following particulars. In 2001, plaintiff was reprimanded for leaving a key in the wood chipper at a time when there was no policy for removing the key from the chipper after use. FAC. ¶ 10. Several months later, plaintiff was disciplined when a worker at another site left a key in the chipper and plaintiff transported the chipper for the other worker. Id. Two weeks prior to his termination, plaintiff submitted a doctor's note and request that he be excused from wood cutting due to irreparable bursitis. FAC, ¶ 11. Cavaille told plaintiff, "that's the problem with the aging workforce." Id. Thereafter, Cavaille forced plaintiff to cut wood and made no accommodations to plaintiff's job duties. Id. On April 8, 2003, plaintiff's employer falsely alleged as a reason for plaintiff's termination that plaintiff's crew was not wearing eye protection while cutting wood. FAC, ¶ 12. This conduct caused plaintiff severe emotional distress. FAC, ¶ 25.

Wrongfully motivated discharge alone is insufficient to establish the intolerable conduct element of the IIED tort. Madani v. Kendall Ford, Inc., 818 P.2d 930, 933-34 (Or. 1991) (en banc) (abrogated on other grounds by McGanty v. Staudenraus, 901 P.2d 841 (Or. 1995)). More is required. The employer's conduct must constitute an extraordinary transgression of the bounds of socially tolerable conduct toward an employee. Hall v. The May Department Stores Co., 637 P.2d 126, 137 (Or. 1981) (abrogated on

other grounds by McGanty, supra). The court agrees with defendant that Cavaille's alleged conduct is not sufficiently abusive or cruel to permit recovery under this theory. Defendant is entitled to summary judgment on plaintiff's IIED claim. The court need not consider defendant's argument that plaintiff has not alleged facts in support of the intent element.

Defendant next contends that plaintiff's wrongful discharge claim fails because the evidence does not prove that plaintiff was discharged for resisting disability-based discrimination. Plaintiff contends there is a dispute of fact as to whether he submitted medical documentation of his condition, and the jury could infer from the timing of the discharge and other evidence that defendant's proffered reason was a pretext for discharge in retaliation for plaintiff's request for accommodation. This court has held that a common law claim for this type of retaliatory discharge is preempted by Oregon statute. Galenbeck v. Newman & Newman, Inc., 2004 WL 1088289, *8 (D.Or.). The particular retaliatory conduct alleged is prohibited by Or.Rev.Stat. § 659A.109, and the legislature provided for virtually all common law remedies in a civil action for violation of this statue. See Or.Rev.Stat. § 659A.885; Galenbeck, supra. In these circumstances, the claim is preempted. See Farrimond v. Louisiana Pacific Corp., 798 P.2d 697, 698 (Or.App. 1990) (discussing when a common law claim is preempted).

10 - ORDER

Defendant is entitled to summary judgment on the fourth and fifth claims of the FAC, alleging IIED and wrongful discharge, respectively.

## Conclusion

Based on the foregoing, defendant's motion for summary judgment [#31] is granted in part and denied in part.

IT IS SO ORDERED.

DATED this 14th day of July, 2005.

/s/ Michael R. Hogan
United States District Judge